# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT THOMAS and TULIKA MUKHERJEE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>    v.<br><br>PARK HA BIOLOGICAL TECHNOLOGY CO., LTD., XIAOQIU ZHANG, XIAOQIU HOLDING LTD., XIAOYAN ZHU, LI WANG, WWC, P.C., DAWSON JAMES SECURITIES, INC. and D. BORAL CAPITAL LLC,<br><br>Defendants. | Case No. 26-cv-6421<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT FOR
## <u>VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>

**MORRIS KANDINOV LLP**
Aaron T. Morris
Andrew W. Robertson
William H. Spruance III
305 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 431-7473
aaron@moka.law
andrew@moka.law
william@moka.law

*Attorneys for Plaintiffs*

Plaintiffs Robert Thomas and Tulika Mukherjee ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, the investigation of Plaintiffs' counsel, which included, without limitation, review and analysis of: (1) regulatory filings made by Park Ha Biological Technology Co., Ltd. ("PHH" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (2) press releases issued by and disseminated by the Company; and (3) review of other publicly available information regarding Defendants.

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This is a class action on behalf of persons and entities that purchased or otherwise acquired PHH securities between December 27, 2024 and July 8, 2025, inclusive (the "Class Period"). Plaintiffs pursue claims against PHH, Xiaoqiu Zhang, Xiaoqiu Holding Ltd., Xiaoyan Zhu, Li Wang, WWC, P.C., Dawson James Securities, Inc., and D. Boral Capital, LLC (collectively, "Defendants"), under the Securities Act of 1933, 15 U.S.C. § 77a (the "Securities Act") and the Securities Exchange Act of 1934, 15 U.S.C. § 78a (the "Exchange Act").

2.    PHH develops and sells skincare and cosmetics products under the "Park Ha" brand and operates franchise beauty stores in China through an online-to-offline ("O2O") business model. As of April 30, 2025, the Company had 39 franchisees total.

3.    The Company is a holding company incorporated in the Cayman Islands with its principal executive offices located in Wuxi in the Jiangsu Province of the People's Republic of China (the "PRC" or "China").

1

4.     This case arises from the collapse of PHH's stock in early July 2025, which followed an artificial price surge created through fraudulent stock promotions conducted immediately after the Company's initial public offering ("IPO"). PHH's stock price increased from its IPO price of $4.00 to an all-time high of $41.49 on July 7, 2025, despite the absence of any material corporate developments or legitimate business prospects to justify such an enormous spike. Investigations and public reports have revealed PHH's stock was utilized in a market manipulation and "pump-and-dump" promotional scheme, with impersonators claiming to be legitimate financial advisors touting PHH in online forums, chat groups, and social media posts with baseless claims to create a buying frenzy among retail investors.

5.     The sharp rise proved short-lived. On July 8, 2025, PHH's stock price cratered by approximately 93%, closing at $2.99 per share, wiping out more than $1 billion in market capitalization in a single trading session.

6.     Throughout the Class Period, Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations, and the true nature of its securities trading activity. Specifically, Defendants failed to disclose to investors: (1) that PHH was the subject of a fraudulent stock promotion scheme involving social media-based misinformation and impersonated financial professionals; (2) that PHH's public statements and risk disclosures omitted any mention of the false rumors and artificial trading activity driving the stock price; (3) that PHH's IPO was intentionally structured with an extremely low public float to enable the manipulation scheme; and (4) that, as a result of the foregoing, Defendants' positive statements about PHH's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## II.    JURISDICTION AND VENUE

7.    The claims asserted herein arise pursuant to Section 11, 12, and 15 of the Securities Act (15 U.S.C. §§ 77k, 77*l*, and 77o); Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)); and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Section 22(a) of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b), Section 22(a) of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this District. In addition, the Company's agent for service of process, Cogency Global Inc., is located in this District.

10.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, the internet, and the facilities of a national securities exchange.

## III.    PARTIES

11.    Plaintiffs Robert Thomas and Tulika Mukherjee, as set forth in the accompanying certifications, incorporated by reference herein, purchased PHH securities during the Class Period, and suffered damages as a result of federal securities law violations and false and/or misleading statements and/or material omissions.

12.     Defendant Park Ha Biological Technology Co., Ltd. is a Cayman Islands holding company with its principal executive offices located in Wuxi, Jiangsu Province, China. The Company's ordinary shares traded on the NASDAQ under the symbol "PHH" during the Class Period, and subsequently under the symbol "BYAH" following a ticker change effective October 28, 2025.

13.     Defendant Xiaoqiu Zhang ("Zhang") is the founder, Chairperson of the Board of Directors, and Chief Executive Officer ("CEO") of PHH at all relevant times. Zhang controls the Company through Defendant Xiaoqiu Holding, which beneficially owns more than 90% of the Company's aggregate voting power and at the time of the IPO owned 72.7% of the aggregate voting power.

14.     Defendant Xiaoqiu Holding Ltd. ("Xiaoqiu Holding") is a British Virgin Islands company that is 100% owned and controlled by Defendant Zhang.

15.     Defendant Xiaoyan Zhu ("Zhu") has served as PHH's Chief Financial Officer ("CFO") since 2016 and as a director since in or around July 2024.

16.     Defendant Li Wang ("Wang") has served as a director of PHH since in or around July 2023.

17.     Defendant WWC, P.C. ("WWC" or the "Auditor Defendant") has served as the Company's auditor since 2022.

18.     Defendant Dawson James Securities, Inc. ("Dawson James") served as the lead underwriter in connection with PHH's December 27, 2024 IPO.

19.     Defendant D. Boral Capital LLC ("D. Boral," and together with Dawson James, the "Underwriter Defendants") served as co-underwriter in connection with PHH's IPO.

20.    Defendants Zhang, Zhu, and Wang (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's public statements and filings, including reports to the SEC, press releases, and other presentations disseminated to the investing public. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

21.    The Auditor Defendant issued a clean audit opinion on the Company's financial statements incorporated into the Registration Statement issued in connection with the Company's December 27, 2024 IPO. Additionally, Defendant WWC was PHH's auditor throughout and for years prior to the Class Period and had access to material non-public information. Because of its position, WWC knew or should have known that the adverse facts alleged herein had not been disclosed to and were being concealed from the investing public and that the positive representations being made were materially false and/or misleading. Furthermore, due to its position, Defendant WWC had the ability and opportunity to prevent issuance of fraudulent SEC filings or cause them to be corrected. Therefore, the Auditor Defendant is also liable for the materially false and misleading statements and omissions pleaded herein.

22.    The Underwriter Defendants were identified as the book-running managers on the IPO at numerous points throughout the Prospectus (defined below). Dawson James served as the representative underwriter and signatory on the underwriting agreement between the Company and the underwriters (the "Underwriting Agreement") and agreed to conduct the IPO on a firm commitment basis. D. Boral served as co-underwriter and underwrote 720,000 of the 1,200,000

ordinary shares offered, representing 60% of the total offering. The Underwriter Defendants, based on their position, had the ability and opportunity to prevent the issuance of fraudulent SEC filings and/or cause them to be corrected. With this authority and by acting as book-running managers and underwriters for the IPO, Plaintiffs and the Class could and did reasonably attribute the materially misleading false statements and omissions contained in the Registration Statement (defined below) to the Underwriter Defendants, and accordingly, the Underwriter Defendants are also liable for the false statements and omissions pleaded herein.

## IV.   SUBSTANTIVE ALLEGATIONS

### A.   Material Misstatements and Omissions in the Registration Statement and Prospectus

23.    The Class Period begins on December 27, 2024, when the Company filed its IPO Prospectus permitting PHH to issue 1,200,000 ordinary shares at an initial offering price of $4.00 per share for a total capital raise of approximately $4.8 million (the "Prospectus"). The total outstanding shares after the IPO were disclosed to be 26,200,000 ordinary shares. Therefore, the IPO represented less than 5% of total PHH ownership.

24.    In the Prospectus dated December 27, 2024, which formed part of the registration statement filed in connection with the IPO (the "Registration Statement"), the Company described its business as follows:

> Park Ha Cayman is a holding company incorporated in the Cayman Islands with no operations of its own. Our Operating Subsidiaries conduct operations in China. Our Operating Subsidiaries are (i) Xinzhan, which was incorporated in Wuxi, Jiangsu Province, PRC on March 31, 2016 under the laws of the PRC, (ii) Park Ha Jiangsu, which was incorporated in Wuxi, Jiangsu Province, PRC on August 13, 2019, and (iii) Park Ha Shanghai, which was incorporated in Shanghai, PRC on April 17, 2017.
>
> Our Operating Subsidiaries specialize in providing skincare and cosmetic products under our brand name "Park Ha" in China. Our

Operating Subsidiaries develop our proprietary beauty products and offer complimentary after-sales beauty services in our physical stores. Park Ha Jiangsu, in addition to operating our two physical stores, is the research and development center focusing on skincare product development and improvement for sensitive skin. Xinzhan leads the marketing and promotional efforts and is the entity in charge of our franchising business. Park Ha Shanghai is a training center for our franchisee staff. As part of our value-added service for our products, our directly operated and franchise stores offer "light beauty experience", a quick complimentary after-sales beauty service performed in the stores. Light beauty experience is offered to our customers as an effective way to demonstrate how our products are used in order to deliver best results.

25.   The Prospectus also contained the Company's 2022 and 2023 financial results for the fiscal years ended October 31, 2023 and 2022, as well as the six months ended April 30, 2024. For the six months ended April 30, 2024, the Company stated as follows:

### *Gross profit and gross profit margin — Non-franchisees*

For the six months ended April 30, 2024 and 2023, gross profit of products sales to non-franchisees accounted for 20% and 9% of the total gross profit, respectively. The gross profit and gross profit margin for the six months ended April 30, 2024 were $153,194 and 93%, respectively. The gross profit and gross profit margin for the six months ended April 30, 2023 were $110,866 and 85%, respectively. The above increase in gross profit margin is mainly due to the decrease in cost of products sales to non-franchise for the six months ended April 30, 2024 as mentioned above.

### *Product sales — Franchisees*

Product sales revenue from franchisees increased by $41,582, or 44%, from $94,418 for the six months ended April 30, 2024 to $136,000 for the six months ended April 30, 2024. Sales revenue from franchisees accounted for 16% and 7% of the total revenue, respectively, for the six months ended April 30, 2024 and 2023. The main reason for the above-mentioned increase is the increase of $60,507 in the product sales due to the introduction of the new products.

### *Cost of revenue — Products Sales to Franchisees*

The cost of products sales to franchisees for the six months ended April 30, 2024 was $28,460, representing an increase of

7

$7,736, or 37%, compared to $20,724 for the six months ended April 30, 2023. For the six months ended April 30, 2024 and 2023, the cost of products sales to franchisees accounted for 29% and 17% of the total cost of revenue, respectively. The above increase is in line with the increase in product sales revenue from franchisees.

### Gross profit and gross profit margin — Franchisees

For the six months ended April 30, 2024 and 2023, gross profit of products sales to franchisees accounted for 15% and 6% of the total gross profit, respectively. For the six months ended April 30, 2024, gross profit and gross profit margin were $107,540 and 79%, respectively, while for the six months ended April 30, 2023, gross profit and gross profit margin were $73,694 and 78%, respectively. The gross profit margin remained relatively stable.

### Sales — Franchise fees

For the six months ended April 30, 2024, the total revenue from franchise fees was $551,970, with a cost of franchise fees of $57,885, compared to $1,146,368 and $84,358 for the six months ended April 30, 2023. Gross profit of franchise fees decreased by $567,925 for the same period. For the six months ended April 30, 2024 and 2023, the total revenue from franchise fees accounted for 65% and 84% of the total revenue, respectively. For the six months ended April 30, 2024 and 2023, the cost of franchise fees accounted for 59% and 67% of the total cost of revenue, respectively.

26.    The Prospectus also addressed the Company's purported "Growth Strategies" and stated as follows:

> *Strengthening the development of own products.* We plan to expand our partnership with scientific research institutions to develop new skincare raw materials and products, and expand the scope of services to existing customers and acquire new customers by continually making significant investments in R&D.
>
> *Improving our Training Practice.* We plan to open vocational training schools to provide professional training to our franchisee staff and to set up an internal training institute on beauty treatment to advance existing talents at the headquarters.
>
> *Enhance our social media-based sales and marketing capabilities* — We will continue to seek to improve brand awareness by using social media platforms, such as Douyin, RED and WeChat video, to

8

promote our brand and attract potential future customers and franchisees.

*Improve supply chain capacity* — In order to meet the rapidly growing customer demand, Park Ha Jiangsu has partnered with additional third-party manufacturers to increase production and shorten the wait time. We also plan to establish partnerships with third-party warehouse and distribution centers to support our businesses.

27.     The Prospectus also included vague boilerplate risk disclosures regarding risk factors that could hypothetically adversely affect the Company and its investors, including the following:

There have been instances of extreme stock price run-ups followed by rapid price declines and strong stock price volatility with recent initial public offerings, especially among those with relatively smaller public floats. As a relatively small-capitalization company with a relatively small public float, we may experience greater share price volatility, extreme price run-ups, lower trading volume, and less liquidity than large-capitalization companies. In particular, our Ordinary Shares may be subject to rapid and substantial price volatility, low volumes of trades, and large spreads in bid and ask prices. Such volatility, including any stock run-ups, may be unrelated to our actual or expected operating performance and financial condition or prospects, making it difficult for prospective investors to assess the rapidly changing value of our Ordinary Shares. The trading performances of other Hong Kong and Chinese companies' securities after their offerings may affect the attitudes of investors towards China-based, U.S.-listed companies, which consequently may affect the trading performance of our Ordinary Shares, regardless of our actual operating performance.

In addition, if the trading volumes of our Ordinary Shares are low, persons buying or selling in relatively small quantities may easily influence the price of our Ordinary Shares. This low volume of trades could also cause the price of our Ordinary Shares to fluctuate greatly, with large percentage changes in price occurring in any trading day session. Holders of our Ordinary Shares may also not be able to readily liquidate their investment or may be forced to sell at depressed prices due to low volume trading. Broad market fluctuations and general economic and political conditions may also adversely affect the market price of our Ordinary Shares. As a result of this volatility, investors may experience losses on their

9

investment in our Ordinary Shares. A decline in the market price of our Ordinary Shares also could adversely affect our ability to issue additional Ordinary Shares or other securities and our ability to obtain additional financing in the future. No assurance can be given that an active market in our Ordinary Shares will develop or be sustained. If an active market does not develop, holders of our Ordinary Shares may be unable to readily sell the shares they hold or may not be able to sell their shares at all.

28.    The statements identified above in paragraphs 24 through 27 were false and misleading because the statements failed to disclose that: (1) PHH was the subject of a market manipulation and fraudulent promotion scheme involving social media-based misinformation and impersonators posing as financial professionals; (2) PHH's IPO was intentionally structured with an extremely low public float to enable the manipulation scheme; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. Moreover, Defendants' purported risk disclosures were materially false and misleading insofar as they presented a potential risk of manipulative trading, without disclosing the known risk that PHH's stock was subject to a coordinated market manipulation scheme.

29.    Each of the Individual Defendants signed the Registration Statement. The Prospectus contains the signature of the Auditor Defendant with respect to its opinion and report. The Prospectus identifies Dawson James and D. Boral as underwriters for the IPO and both were a party to the "Underwriting Agreement" which was submitted as Exhibit 1.1 to the Form F-1/A Registration Statement filed by the Company on December 20, 2024. The Underwriting Agreement expressly provides in pertinent part in Section 3(a) under the heading Covenants of the Company that: "[t]he Company shall deliver to the Representative [Dawson James], prior to filing, any amendment or supplement to the Registration Statement or Prospectus proposed to be filed after the Effective Date and not file any such amendment or supplement to which the

10

Representative shall reasonably object in writing[.]" Accordingly, the Underwriter Defendants had the opportunity to review the registration and Prospectus publicly filed with the SEC.

B.    **Auditor Defendant Allegations**

30.    The unqualified audit opinion of WWC, P.C. covering the two-year period ended October 31, 2023 was incorporated into the IPO, registration statements, prospectuses, and other offerings of securities the Company filed during the Class Period. In their opinion, WWC certified that "[i]n our opinion, the financial statements present fairly, in all material respects, the financial position of the Company as of October 31, 2023 and 2022" and that the audits were conducted "in conformity with accounting principles generally accepted in the United States of America" and "in accordance with the standards of the PCAOB" which "require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether due to error or fraud." They go on to affirm the procedures they performed stating:

> Our audits included performing procedures to assess the risks of material misstatement of the financial statements, whether due to error or fraud, and performing procedures that respond to those risks. Such procedures included examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements. Our audits also included evaluating the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the financial statements. We believe that our audits provide a reasonable basis for our opinion.

31.    In issuing unqualified audit opinions on PHH's financial statements, WWC failed to comply with the professional standards dictated by the PCAOB. These standards required WWC to exercise due professional care in the performance of the audit and to obtain competent, sufficient evidentiary matter to form a basis for their opinion, and to obtain reasonable assurances that the financial statements were free from material misstatement, whether caused by error or fraud.

11

32.     In conducting its audits, WWC had access to the files and key employees of the Company at all relevant times. As PHH's auditor, WWC had continuous access to and knowledge of the Company's confidential internal, corporate, financial, operating, and business information, and had the opportunity to observe and review PHH's business and accounting practices, and to test the Company's internal accounting information and publicly reported financial statements as well as PHH's internal controls and structures. Accordingly, WWC was aware of significant deficiencies and material weaknesses at the Company. Thus, had WWC complied with PCAOB standards, they would have determined that there was no reasonable basis for their unqualified audit report because, among other things, WWC was aware of undisclosed facts tending to seriously undermine the accuracy of its audit reports, its conformity with GAAP and the Company's reported financial metrics.

### C.      Post-IPO Developments and the Crash

33.     On December 30, 2024, the Company closed the IPO and commenced trading on the Nasdaq Capital Market under the ticker symbol "PHH."

34.     On January 7, 2025, the Company announced on Form 6-K the appointment of Da Yang as an independent director. Yang was the sole independent director appointed after the IPO.

35.     By late June 2025, the Company's share price had risen significantly from the $4.00 IPO price without any corresponding material corporate developments, financial results, or other news to justify the increase. On June 30, 2025, the Company's stock closed at $34.99 with a trading volume of 564,000.

36.     Between June 6, 2025 and June 16, 2025, the trading volume of the Company's stock averaged approximately 328,000 shares per day.

37.    On July 7, 2025, the Company's stock closed at $41.01, with an intraday high of $41.49 and a trading volume of over 1.3 million shares. At that time, the Company had approximately 26,374,403 shares outstanding, giving it a market capitalization of over $1 billion—a staggering valuation for a skincare company with only approximately 40 franchise stores in China that had conducted its IPO just six months earlier at an implied enterprise valuation of approximately $96 million (based on $4.8 million in proceeds for a 5% stake).

38.    Also on July 7, 2025, the Company's Board of Directors approved the Amended and Restated 2025 Share Incentive Plan, which increased the maximum aggregate number of ordinary shares issuable under the plan from 3,000,000 to 7,500,000 shares.

39.    The next day, July 8, 2025, the Company's stock collapsed. Over the course of a single trading session, the share price plummeted by approximately 93% from the prior day's close of $41.01 to just $2.99 per share, with a trading volume of over 8.9 million. The drop in stock price wiped out nearly $1 billion in market capitalization.

40.    The following stock chart demonstrates the severity of the drop in the Company's stock.[1]

---

[1] The Company, in order to maintain compliance with NASDAQ rules, completed a 50:1 reverse stock split on January 29, 2026. The chart reflects post-split numbers.



41.    Notably, the Company failed to release any press release or statement regarding the highly unusual trading patterns and catastrophic losses suffered on July 8, 2025. However, on July 10, 2025, the Company filed a Form S-8 with the SEC, registering the additional 4,500,000 ordinary shares under the Amended and Restated 2025 Share Incentive Plan.

42.    The Company has never acknowledged in any subsequent filings or press releases the blatant and severe manipulation of its stock price.

43.    On August 25, 2025, Da Yang—the only independent director appointed after the IPO—resigned from the Company's Board of Directors. The Company represented that Yang's resignation purportedly was "not a result of any disagreement" with the Company's operations, policies, or procedures.

44.    On October 24, 2025, the Company announced it would change its trading symbol from "PHH" to "BYAH" effective October 28, 2025, purportedly to "prevent potential confusion with a delisted company that used the same symbol."

14

### D.    The Market Manipulation Scheme

45.    The structure of the Company's IPO was intentionally designed to facilitate an eventual pump-and-dump scheme. The Company conducted a low-float IPO, offering just 1,200,000 shares to the public while insiders retained more than 95% of all shares, allowing for price manipulation as even modest buying pressure could create explosive price movement.

46.    Investigations and public reports have revealed that the Company's stock was used as a primary vehicle for an illicit "pump-and-dump" promotion scheme. Impersonators, using stolen identities of legitimate financial advisors, touted PHH in WhatsApp groups with sensational but baseless claims to create a buying frenzy among retail investors. The structure of the Company's public listing and low float made the scam possible.

47.    After clicking on Facebook or Instagram ads promoting stock training or advice, often featuring a celebrity, TV or internet personality, or legitimate, real-world financial advisor, victims were funneled into WhatsApp groups where scammers impersonated financial advisors.

48.    In the WhatsApp groups, victims were provided stock recommendations over a period of weeks purportedly based on the research and analysis of professional investors. For example, participants in one WhatsApp Group, called the IF Traders Circle community, were told they were receiving investment recommendations, as well as market commentary, analysis, and technical training, from Professor John J. Ptak, a purported investment strategist and expert in international finance.

49.    Beginning on June 18, 2025 and continuing through July 8, 2025 (the day of the crash), victims in the WhatsApp Groups were instructed to buy shares of PHH. The purported financial advisors represented that the recommendation was based on analysis of purchasing patterns of large institutional investors, who were increasing their holdings of PHH, and an

15

anticipated price increase of 200% to 300% from a yet-to-be-announced partnership between PHH and global cosmetics firm L'Oréal for a line of products designed for sensitive skin.

50.     The misrepresentations made by impersonators in the WhatsApp Groups, combined with Defendants' public statements and failures to make adequate cautionary or corrective disclosures, caused Plaintiffs and other members of the Class to purchase shares of PHH.

51.     The statements made by impersonators had no legitimate basis in the Company's actual operations or financial condition, yet they were presented as authoritative tips to lure retail investors into purchasing PHH shares at inflated prices. By peddling fabricated prospects of imminent corporate success, the scheme misled investors about PHH's value and created artificial demand for the stock. PHH's IPO and low float were purposefully designed by Defendants to enable this fraudulent scheme to be effectuated.

## V.     CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired PHH ordinary shares on the Nasdaq Stock Market between December 27, 2024, and July 8, 2025, inclusive (the "Class Period"), and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, PHH's ordinary shares actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds or

16

thousands of members in the proposed Class. Hundreds of thousands of PHH shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by PHH or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

54. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

56. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of PHH; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

57. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

17

of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VI.    UNDISCLOSED ADVERSE FACTS

58.    The market for PHH's securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose alleged herein, PHH's securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired PHH's securities relying upon the integrity of the market price of the Company's securities and market information relating to PHH and have been damaged thereby.

59.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of PHH's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about PHH's business, operations, and prospects as alleged herein.

60.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about PHH's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or

18

misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## VII.   LOSS CAUSATION

61.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class. During the Class Period, Plaintiffs and the Class purchased PHH's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## VIII.   SCIENTER ALLEGATIONS

62.     As alleged herein, Defendants acted with scienter because Defendants: (1) knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; (2) knew that such statements or documents would be issued or disseminated to the investing public; and (3) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding PHH, their control over, and/or receipt and/or modification of PHH's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning PHH, participated in the fraudulent scheme alleged herein.

19

## IX.    PRESUMPTION OF RELIANCE

63.    The market for PHH's securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, PHH's securities traded at artificially inflated prices during the Class Period.

64.    Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of PHH's securities and market information relating to the Company and have been damaged thereby.

65.    During the Class Period, the artificial inflation of PHH's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about PHH's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of PHH and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times and, when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, and each of them has been damaged as a result.

66.    At all relevant times, the market for PHH's securities was an efficient market for the following reasons, among others:

(a)    PHH shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

20

(b)      as a regulated issuer, PHH filed periodic public reports with the SEC and/or the NASDAQ; and/or

(c)      PHH regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

67.      As a result of the foregoing, the market for PHH's securities promptly digested current information regarding PHH from all publicly available sources and reflected such information in PHH's share price. Under these circumstances, all purchasers of the Company's securities during the Class Period suffered similar injury through their purchase of PHH's securities at artificially inflated prices and a presumption of reliance applies.

68.      A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the material misstatements and omissions set forth above, that requirement is satisfied here.

## X.    NO SAFE HARBOR

69.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of PHH who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5
### Against All Defendants

70.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

71.    This Count is asserted against all Defendants for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

72.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing

22

public, including Plaintiffs and other Class members, as alleged herein; (b) artificially inflate and maintain the market price of PHH securities; and (c) cause Plaintiffs and other members of the Class to purchase PHH securities at artificially inflated prices.

73.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of PHH securities in an effort to maintain artificially high market prices for PHH securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

74.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about PHH's business, operations, and future prospects, as specified herein.

75.     Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of PHH's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about PHH and its business operations and future prospects in light of the circumstances under which they were made not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of PHH securities during the Class Period.

76.     The Defendants made the materially false and misleading statements and omissions set forth above either knowingly or with reckless disregard for the truth. The false and misleading statements and omissions complained of in this Complaint were materially false and misleading in that they failed to disclose and misrepresented the adverse facts pertaining to PHH's business, operations, and prospects, which were known to or recklessly disregarded by Defendants, but concealed from the investing public, as detailed above.

77.     Each of the Individual Defendants, as a senior executive and/or director of PHH, was aware of or recklessly disregarded facts that indicated that the public statements being made by or on behalf of PHH were false and misleading. The Individual Defendants were closely involved in the day-to-day operations of PHH and, at all relevant times, were directly involved in and closely monitored the decision-making process concerning PHH's securities offerings, capital-raising activities, public disclosures, and reports to the SEC. The Individual Defendants participated in creating, reviewing, certifying, and/or signing PHH's SEC filings and press releases. The Individual Defendants were provided with copies of PHH's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.

78.     In particular, Defendant Zhang directly participated in the fraudulent scheme by virtue of her role as founder, CEO, and controlling shareholder of PHH. Zhang controlled the Company through Xiaoqiu Holding Ltd., which beneficially owned a majority of the Company's total voting power. Zhang signed SEC filings, including the Registration Statement and Prospectus containing materially false and misleading statements and omissions. Zhang's direct participation in every critical aspect of the Company's public statements and capital structure decisions establishes that she acted with actual knowledge and intent to defraud.

24

79.    Defendant PHH is liable for the materially false and misleading statements made and information released by its officers and directors, including the Individual Defendants named herein, through SEC filings, press releases, and other communications to investors and the market.

80.    Each Defendant, as alleged above, acted with scienter in that he, she, or it knew that the public documents and statements issued or disseminated in the name of PHH were materially false and misleading, knew that such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. Defendants, by virtue of their receipt of information reflecting the true facts of PHH, their control over and/or receipt and/or modification of PHH's allegedly materially misleading statements, and/or their positions with the Company, which made them privy to confidential proprietary information concerning PHH, participated in the fraudulent scheme alleged herein.

81.    The Individual Defendants, as officers, directors, and/or controlling persons of a publicly held company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on NASDAQ and governed by the provisions of the federal securities laws, had a duty to promptly disseminate accurate and truthful information with respect to PHH's financial condition and operations, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of PHH's publicly traded securities would be based upon truthful and accurate information.

82.    As a result of Defendants' false statements and omissions, PHH securities traded at artificially inflated prices during the Class Period. In ignorance of the fact that Defendants had issued false and misleading statements and omitted material facts, and in reliance on Defendants'

statements and/or the integrity of the market in which PHH securities traded, and/or on the absence of corrective information in the market, Plaintiffs and the other members of the Class acquired PHH securities during the Class Period at artificially inflated prices and were damaged thereby.

83.     At the time of the misrepresentations and omissions alleged herein, Plaintiffs and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known of the true facts which were not disclosed by Defendants or known of the falsity of the statements made by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their PHH securities, or, if they had acquired such securities, they would not have done so at the artificially inflated prices at which they acquired them.

84.     By reason of the conduct alleged herein, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

85.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases of PHH securities during the Class Period

## SECOND CLAIM

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

86.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

87.     The Individual Defendants acted as controlling persons of PHH within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the

26

SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

88.    The Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

89.    As set forth above, PHH and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## <u>THIRD CLAIM</u>

### Violation of Section 11 of the Securities Act
### Against PHH, the Individual Defendants,
### Auditor Defendant, and Underwriter Defendants

90.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, only to the extent, however, that the allegation does not allege fraud, scienter, or the intent of the Defendants to defraud Plaintiffs or the other members of the Class.

27

91.    This Claim is brought pursuant to Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, on behalf of the Class, against PHH, the Individual Defendants, Auditor Defendant, and Underwriter Defendants. This Claim does not sound in fraud. Plaintiffs do not allege that Defendants had scienter or fraudulent intent, which are not elements of a Section 11 claim.

92.    The Registration Statement contained inaccurate and misleading statements of material fact, omitted facts necessary to render statements therein non-misleading, and omitted to state material facts required to be stated therein.

93.    As an issuer of securities to the public, PHH is strictly liable to Plaintiffs and the Class for the misstatements and omissions.

94.    Each of the Individual Defendants signed the Registration Statement. Each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. By virtue of their failure to exercise reasonable care, the Registration Statement contained misrepresentations of material facts and omissions of material fact necessary to make the statements made therein not misleading. As such, the Individual Defendants are strictly liable to Plaintiffs and the Class.

95.    The Underwriter Defendants failed to perform adequate due diligence in connection with their role as underwriters and were negligent in failing to ensure that the Registration Statement for the IPO was prepared properly and accurately. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein. As such, the Underwriter Defendants are strictly liable to Plaintiffs and the Class.

96.    The Auditor Defendant failed to perform an adequate audit in connection with its role as auditor and was negligent in issuing an unqualified opinion on financial statements that

28

were materially misstated. The Auditor Defendant's failure to conduct an adequate audit in accordance with PCAOB standards was a substantial factor leading to the harm complained of herein. As such, the Auditor Defendant is strictly liable to Plaintiffs and the Class.

97.     Defendants were responsible for the contents and dissemination of the Registration Statement. None of the Defendants made a reasonable investigation or possessed reasonable grounds to believe that the statements in the Registration Statement were complete, accurate, or non-misleading. By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

98.     Plaintiffs and the other members of the Class purchased PHH securities pursuant or traceable to the Registration Statement for the IPO and have sustained damages as a result. The price of PHH securities has declined substantially subsequent to and due to Defendants' violations.

99.     Less than one year elapsed from the time that Plaintiffs discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiffs commenced this action. Less than three years elapsed between the time the securities upon which this Claim is brought were offered to the public and the time Plaintiffs commenced this action.

### FOURTH CLAIM

**Violation of Section 12(a)(2) of the Securities Act**
**Against PHH and the Underwriter Defendants**

100.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, only to the extent, however, that the allegation does not allege fraud, scienter, or the intent of the Defendants to defraud Plaintiffs or the other members of the Class.

101.    This Count is brought pursuant to Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § *77l*(a)(2), on behalf of the Class, against PHH and the Underwriter Defendants. This

Claim does not sound in fraud. Plaintiffs do not allege that Defendants had scienter or fraudulent intent, which are not elements of a Section 12(a)(2) claim.

102.    PHH and the Underwriter Defendants were sellers and offerors and/or solicitors of purchasers of the PHH securities offered pursuant to the Prospectus and issued in connection with the IPO. Plaintiffs and other members of the Class purchased or otherwise acquired PHH securities pursuant to the IPO. The Prospectus contained defective and inaccurate statements that Defendants used to induce Plaintiffs and the other members of the Class to purchase PHH securities registered in the IPO.

103.    The Underwriter Defendants participated in the preparation and dissemination of the defective and inaccurate Prospectus for their own financial benefit. But for their participation in the IPO, including its solicitation, the IPO could not, and would not, have been accomplished.

104.    The Prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. PHH and the Underwriter Defendants owed Plaintiffs and the other members of the Class who purchased the PHH securities pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.

105.    Plaintiffs did not know, nor in the exercise of reasonable diligence could Plaintiffs have known, of the untruths and omissions contained in the Prospectus at the time Plaintiffs acquired PHH securities.

106.    By reason of the conduct alleged herein, PHH and the Underwriter Defendants violated Section 12(a)(2) of the Securities Act. As a direct and proximate result of such violations,

Plaintiffs and the other members of the Class who purchased the PHH securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the securities. Accordingly, Plaintiffs and the other members of the Class who hold the securities issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their securities and hereby tender their securities to the Defendants sued herein. Class members who have sold their securities seek damages to the extent permitted by law.

107.    Less than one year elapsed from the time that Plaintiffs discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiffs commenced this action. Less than three years elapsed between the time the securities upon which this Claim is brought were offered to the public and the time Plaintiffs commenced this action.

**FIFTH CLAIM**

**Violation of Section 15 of the Securities Act**
**Against the Individual Defendants**

108.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, only to the extent, however, that the allegation does not allege fraud, scienter, or the intent of the Defendants to defraud Plaintiffs or the other members of the Class.

109.    This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of the Class, against the Individual Defendants. This Claim does not sound in fraud. Plaintiffs do not allege that Defendants had scienter or fraudulent intent, which are not elements of a Section 15 claim.

110.    The Individual Defendants each were control persons of PHH by virtue of their positions as directors and/or senior officers of PHH. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of PHH.

31

111.    The Individual Defendants each were culpable participants in the primary violations of Sections 11 and 12(a)(2) of the Securities Act alleged herein, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

112.    Less than one year elapsed from the time that Plaintiffs discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiffs commenced this action. Less than three years elapsed between the time the securities upon which this Claim is brought were offered to the public and the time Plaintiffs commenced this action.

## XI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief and judgment as follows:

a.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Lead Counsel for the Class;

b.    Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.    Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: July 28, 2026

/s/ Andrew W. Robertson

**MORRIS KANDINOV LLP**
Aaron T. Morris
Andrew W. Robertson
William H. Spruance III
305 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 431-7473
aaron@moka.law
andrew@moka.law
william@moka.law

**MORRIS KANDINOV LLP**
Leonid Kandinov
550 West B Street, 4th Floor
San Diego, CA 92101
Tel. (619) 780-3993
leo@moka.law

*Attorneys for Plaintiffs*

33